UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

POST OFFICE SQUARE LLC and LARRY
WEINSTEIN,

  Plaintiffs,

-against-

VILLAGE OF SPRING VALLEY, VILLAGE OF
SPRING VALLEY BOARD OF TRUSTEES, and
MAYOR ALAN SIMON,

  Defendants.

18-cv-9687 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Post Office Square LLC ("Post Office Square") and Larry Weinstein

("Weinstein") (together, "Plaintiffs") commenced the instant action on or about November 1,

2018, alleging violations of the Fifth and Fourteenth Amendments to the United States

Constitution, as well as claims under the New York State Constitution against Defendants

Village of Spring Valley (the "Village"), Village of Spring Valley Board of Trustees (the

"Trustees"), and Alan Simon, Mayor of Spring Valley ("Mayor Simon") (together,

"Defendants").  (Complaint, ECF No. 6; Amended Complaint ("Am. Compl."), ECF No. 26.)

Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* ECF No. 32.)  For the following

reasons, Defendants' motion to dismiss is GRANTED.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/31/2020

1

**BACKGROUND**

I.     **Factual Allegations**

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

a.     **Initial Development of the Premises**

On or about November 13, 2009, the Village and Post Office Square entered into a development agreement (the "Development Agreement") for the property located at 23 Church Street (Section 57.39, Block 1, Lot 13), Spring Valley, New York (the "Premises"). (Am. Compl. ¶¶ 18–19; Declaration of John Stepanovich ("Stepanovich Decl."), ECF No. 34, Ex. D.) Post Office Square acquired title to the Premises from the Village on January 14, 2013, recorded February 5, 2013. (*Id.* at ¶ 20.)

Post Office Square proceeded to develop the Premises. At some point in 2017, the Village brought a code enforcement case against Plaintiff Weinstein, individually, which halted the work on the Premises for almost one year. (*Id.* at ¶ 44.) Mayor Simon—who, at the time of the enforcement case, was a Village of Spring Valley Justice—presided over the code enforcement case against Weinstein, in which Weinstein was jailed twice. (*Id.* at ¶ 45.)

b.  **2017–18 Building Permit**

On December 13, 2017, the Village's deputy building inspector issued Plaintiffs a building permit to "finish construction" of the building at issue (the "2017–18 Building Permit"); Post Office Square, LLC paid the Village approximately $5,900 for said building permit. (*Id.* at ¶¶ 25–26.) The 2017–18 Building Permit was dated December 13, 2017 through December 13,

2018 and only expired if no work was commenced by December 13, 2018.[1]   (*Id.* at ¶ 27.)  As the

2017–18 Building Permit reflects, a substantial portion of the construction project for the

Premises was completed by December 13, 2017, with an estimated cost of $350,000 to finish—

which reflects not more than 12% of the total cost of the project.  (*Id.* at ¶ 35.)  Between

December 13, 2017 and April 17, 2018, Plaintiffs continued to improve the property pursuant to

the 2017–18 Building Permit and the description of work set forth therein.  (*Id.* at ¶ 36.)

### c.  Default and State Court Action

On or about March 6, 2018, the Village declared Post Office Square LLC in default for,

among other things, commencing construction without a valid permit and for failing to

commence construction.  (*Id.* at ¶ 37.)

On April 17, 2018, Defendants commenced a state court action, entitled *Village of Spring*

*Valley v. Post Office Square LLC, et. al.*, in the Supreme Court of the State of New York,

Rockland County, Index No.: 032220/2018 (the "State Court Action").  (*Id.* at ¶¶ 29, 38.)  In the

State Court Action, Defendants claimed that the Village had exercised the "reverter clause" in

the Development Agreement (Article II, § 2.01) and that Plaintiffs "no longer have any interest

in the property."  (*Id.* at ¶¶ 28, 39; Stepanovich Decl., Ex. C ("State Court Action Compl.").)

During the briefing period for the instant motion, the Supreme Court of the State of New

York, Rockland County, issued a decision ("State Court Decision") in the Village's favor.  (*See*

Declaration of Kevin T. Conway ("Conway Decl."), ECF No. 37, Ex. D (Decision and Order

---

[1] Prior to December 13, 2017, Post Office Square LLC paid approximately $29,188.50 for the issuance of a building permit as well as subsequent extensions; it also paid a fine to the Village for a previously expired building permit, in the amount of approximately $14,375. (*Id.* at ¶¶ 23–24, 34.)  By April 17, 2018, Post Office Square, LLC had spent approximately $2.5 million on improvements for the land and construction of the building and property at issue.  (*Id.* at ¶¶ 22, 34.)

dated August 12, 2019).)  In the State Court Decision, Judge Marx settled title to the disputed property (the Premises) and granted all property rights to the Village.  (*Id.*)

### d.   Alleged Affordable Housing Scheme

Plaintiffs allege that Mayor Simon executed a plan to take back and/or revert back the Premises to the Village and to initiate the State Court action because Defendants have taken at least approximately seven figures in federal government funds for affordable housing, and in order to justify retention of same, needed an affordable housing project.  (*Id.* at ¶ 30.)  As a result of this alleged scheme, Plaintiff's business partners pulled out of investing in the Premises and Plaintiffs are unable to obtain financing.  (*Id.* at ¶ 31.)  Plaintiffs allege that the State Court Action has continued to have a chilling effect on Plaintiffs' ability to make any further improvements on the Premises and/or obtain investors or financing thereof.  (*Id.* at ¶ 33.)

Defendants have claimed ownership and reversion of the Premises, and have ousted Plaintiffs from the building, and blocked the Plaintiffs from a meeting between the Defendants and the Plaintiffs' investors.  (*Id.* at ¶ 42.)  Defendants have also imposed additional requirements upon the Development Agreement, requiring that Plaintiffs and/or Plaintiffs' investors or any bona fide purchaser thereof convert the Premises and/or a portion thereof from commercial to affordable housing.  (*Id.* at ¶ 43.)  Plaintiffs allege the reason for this is so that Defendants have an excuse to retain millions of dollars in HUD funds.  (*Id.*)

On or about November 1, 2018, Plaintiffs commenced this suit, and filed an Amended Complaint on March 25, 2019 (ECF Nos. 6, 26).

**LEGAL STANDARDS**

## I.   Rule 12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*,

550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to

draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the

sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal

conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir.

2013). While legal conclusions may provide the "framework of a complaint," "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678–79.

Further, a court is generally confined to the facts alleged in the complaint for the

purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding*

*L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the

complaint, statements or documents incorporated into the complaint by reference, matters of

which judicial notice may be taken, public records, and documents that the plaintiff either

possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706

F.3d 145, 152 (2d Cir. 2013).

## II.   Rule 12(b)(1)

A claim is subject to dismissal under Rule 12(b)(1) if the court lacks subject matter

jurisdiction to adjudicate it pursuant to statute or constitutional authority. See Fed. R. Civ. P.

12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to

dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the

pleadings.  *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). A lack

of standing and a failure to exhaust administrative remedies constitute jurisdictional defects and

may be addressed through a Rule 12(b)(1) motion.  *Johnson v. Benheim*, 2001 WL 799569 at *4

(S.D.N.Y. July 13, 2001) (internal citation omitted).  Plaintiff bears the burden of proving by a

preponderance of the evidence that the court has subject matter jurisdiction of the claim asserted.

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1)[,] a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Austl.*

*Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *see also Kamen v. Am.*

*Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen, as here, subject matter

jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit

or otherwise.").

## III.    42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any

statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C.

§ 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating

federal rights elsewhere conferred by those parts of the United States Constitution and federal

statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*,

592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under § 1983, a plaintiff must allege two

essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution

or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v.

City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*,

526 U.S. 40, 49–50 (1999)).

## DISCUSSION

The Amended Complaint alleges violations of the Fifth and Fourteenth Amendments to

the United States Constitution under 42 U.S.C. § 1983 (Am. Compl. ¶¶ 48–59), as well as

violations of Article I, Section 7 of the New York State Constitution.  (*Id*. ¶¶ 60–66.)  Plaintiffs

seek actual damages, punitive damages, attorneys' fees and costs.  (*Id*. ¶¶ 67–70.)

Defendants move to dismiss the Amended Complaint for the following reasons:

abstention, a lack of Article III standing, lack of finality, [2] collateral estoppel, failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6) with respect to Plaintiffs' Fifth and Fourteenth

Constitutional Amendment rights and 42 U.S.C. § 1983 claim, and Mayor Simon's entitlement to

the defenses of Absolute Judicial Immunity and Qualified Immunity.

## I.    Collateral Estoppel

Defendants argue that the State Court Decision collaterally estops Plaintiffs from

asserting their claim to have suffered a taking without just compensation.  "Under collateral

estoppel, once an issue is actually and necessarily determined by a court of competent

jurisdiction, that determination is conclusive in subsequent suits based on a different cause of

action involving a party to the prior litigation."  *Montana v. United States*, 440 U.S. 147, 153

(1979).  "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of

protecting litigants from the burden of relitigating an identical issue with the same party or his

---

[2] Due to the State Court Decision, which was issued during the briefing period for the instant motion, Defendants' abstention, standing, and finality arguments are no longer relevant.

privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980).

New York law governs the preclusive effect of a judgment from a New York state court. *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984) ("[T]he preclusive effect in federal court of petitioner's state-court judgment is determined by [state] law"); *see also Wight v. BankAmerica Corp.*, 219 F.3d 79, 87–88 (2d Cir. 2000). The Second Circuit has recognized that there is "no significant difference" between New York preclusion law and federal preclusion law. *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("The parties agree that there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel.").

The doctrine of collateral estoppel under New York law is applicable upon a showing of two factors: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985). The federal test for the application of collateral estoppel distributes these same elements into a four-part test: "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)).

### a.  The Issues Decided in the Prior Action

In the State Court Action, the Village sought a declaration that Post Office Square and Weinstein "no longer ha[ve] any right, title or interest in [the Premises]." (State Court Decision at 2.)  The core issue raised was whether title to the disputed property had reverted to the Village under the terms of the Development Agreement.  On this point, Post Office Square and Weinstein "dispute[d] the Village's contention that Article II, § 2.01 [of the Development Agreement] confers a right of reversion on the Village." (*See id.* at 3.)  Post Office Square also noted that "as of April 17, 2018, [it had] spent approximately $2.5 million constructing the building and improving the land" and that it "paid the Village approximately $35,088.50 for building permits." (*Id.*)

The parties each filed motions for summary judgment; Judge Marx issued a decision granting the Village's motion and denying Post Office Square and Weinstein's motion. (*Id.*) Judge Marx concluded that "Defendants [Post Office Square and Weinstein] have not raised any issues of material fact." (*Id*. at 5.)  Judge Marx reasoned:

> Defendants [Post Office Square and Weinstein] did not comply with Article II, § 2.01 of the Agreement, which required POS to begin construction of the building 'immediately' after the parcel was conveyed to it by the Village. The Village conveyed the property to POS by deed dated January 14, 2013. POS applied for a building permit on June 10, 2013. The Agreement does not define what the parties intended the term 'immediately' to mean. Under the ordinary dictionary definition of immediate, and the fact that POS had only two years after issuance of the building permit to complete the building, POS's six-month delay in obtaining a building permit after the property was conveyed to it was not immediate commencement of construction.[] Therefore, pursuant to the terms of Article II, § 2.01, because 'POS did not commence construction as required . . . POS shall reconvey [the property] to the Village by bargain and sale deed in its 'as is' condition.

(*Id.*)  Accordingly, Judge Marx held that the Village reacquired the disputed Premises by right of reversion under the contract.

Significantly, the State Court Decision did not order any reimbursement to Post Office

Square of the money it had invested in the Premises.  The State Court Decision also did not

address whether the lack of such reimbursement would constitute a taking without just

compensation, in violation of the Fifth and Fourteenth Amendments to the United States

Constitution.  As such, the issues decided in the State Court Decision were not "identical" to

those raised in the present litigation.  *See Kaufman*, 482 N.E.2d at 67.  Collateral estoppel

therefore does not preclude Plaintiffs' claims.

## II.    Takings Claims

### a.   Federal Claims

The Takings Clause of the Fifth Amendment states that no "private property [shall] be

taken for public use, without just compensation." U.S. Const. Amend. V. The Fifth Amendment

is applicable to the states through the Fourteenth Amendment.  *Webb's Fabulous Pharmacies,*

*Inc. v. Beckwith*, 449 U.S. 155, 101 S. Ct. 446 (1980).  It is "designed to bar [the] Government

from forcing some people alone to bear public burdens which, in all fairness and justice, should

be borne by the public as a whole."  *Id.*; *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104,

123–24 (1978).  It does not prohibit the government's taking of private property but rather, taking

without just compensation.  *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S.

172, 194, 105 S. Ct. 3108 (1985).

This protection extends to two types of takings: physical and regulatory.  *Lingle v.*

*Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005).  Physical takings involve "the direct government

appropriation or physical invasion of private property."  *Id; see also Tahoe-Sierra Pres. Council,*

*Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324 (2002) (describing a "'classi[c] taking'

in which the government directly appropriates private property for its own use") (quoting

10

*Eastern Enterprises v. Apfel,* 524 U.S. 498, 522, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998)).

Regulatory takings, on the other hand, involve "government regulation of private property [that

is] ... so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle*, 544

U.S. at 537. Thus, "while property may be regulated to a certain extent, if regulation goes too far

it will be recognized as a taking." *Id.* (internal quotation marks omitted) (quoting *Pennsylvania

Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

Plaintiffs argue the State Court ordered re-conveyance amounts to a physical taking.[3]

(*See* Plaintiffs' Memorandum of Law in Opposition ("Pl. Opp."), ECF No. 36, at 12.) But,

crucially, the reversion order was issued pursuant to the Development Agreement, not any other

governmental action. The reversion is "attributable not to the government's action, but to the

prior contractual arrangement between [the parties] for such a reversion. The government itself

has not required [plaintiff] to give up or to submit to the physical occupation of the . . . land."

*Forest Properties, Inc. v. United States*, 177 F.3d 1360, 1365 (Fed. Cir. 1999). As at least one

other district court has concluded, "when a governmental entity holds a possibility of reverter in

real property under state law, the government does not 'take' that property within the meaning of

the Fifth Amendment if the triggering event occurs and ownership of the real property

automatically reverts to the government under state law." *Camden Cty. v. Ne. Cmty. Dev. Corp.*,

263 F. Supp. 3d 556, 565 (E.D.N.C. 2017). Accepting Plaintiffs' creative interpretation of a

"taking" "would lead to the absurd result that neither state governments nor the federal

government could ever hold a reversionary interest in real property—whether a possibility of

reverter, a right of entry, or the reversionary interest that accompanies a life estate—because the

---

[3] The other situations cited by Plaintiffs are clearly inapposite. The government has not physically installed cables on the property, as occurred in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421 (1982). And *Cablevision Sys. Corp. v. F.C.C.* briefly discussed regulatory takings—there is no regulation at issue here. 570 F.3d 83, 98 (2d Cir. 2009).

vesting of those interests would constitute a 'taking.'" *Id.* The Court concludes that Plaintiffs have not alleged a constitutional taking, and as such Plaintiffs' Fifth Amendment claim fails as a matter of law. Plaintiff's federal takings claims are therefore dismissed with prejudice.

### b. State Law Claims

The Court dismisses the remaining state-law claims that Plaintiffs assert under the Court's supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the state-law claims Plaintiffs have asserted. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeo*ns, 522 U.S. 156, 173 (1997)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiffs' federal takings claims are dismissed with prejudice. The Court declines to consider under its supplemental jurisdiction any remaining claims that Plaintiff asserts under state law. *See* 28 U.S.C. § 1367(c)(3).

Accordingly, the Clerk of the Court is respectfully directed to terminate Defendants' Motion to

Dismiss at ECF No. 32 and to terminate the action.


Dated:    August 31, 2020                          SO ORDERED:
          White Plains, New York

_____
                                                   NELSON S. ROMÁN
                                                   United States District Judge